1
2
3
4
5
6
7
8 **IN THE UNITED STATES DISTRICT COURT**

9 **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

| | |
|---|---|
| 11 SANDRA SALTZMAN, | No. 2:18-CV-2215-DMC |
| 12 Plaintiff, | |
| 13 v. | MEMORANDUM OPINION AND ORDER |
| 14 COMMISSIONER OF SOCIAL SECURITY, | |
| 15 | |
| 16 Defendant. | |

17

18          Plaintiff, who is proceeding with retained counsel, brings this action for judicial

19 review of a final decision of the Commissioner of Social Security under 42 U.S.C. § 405(g).

20 Pursuant to the written consent of all parties (ECF Nos. 8 and 12), this case is before the

21 undersigned as the presiding judge for all purposes, including entry of final judgment.  See 28

22 U.S.C. § 636(c).  Pending before the court are the parties' briefs on the merits (ECF Nos. 18 and

23 19). For the reasons discussed below, the matter will be remanded for further proceedings.

24

25          The court reviews the Commissioner's final decision to determine whether it is:

26 (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a

27 whole.  See Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999).  "Substantial evidence" is

28 more than a mere scintilla, but less than a preponderance.  See Saelee v. Chater, 94 F.3d 520, 521

(9th Cir. 1996). It is ". . . such evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 402 (1971). The record as a whole, including both the evidence that supports and detracts from the Commissioner's conclusion, must be considered and weighed. See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The court may not affirm the Commissioner's decision simply by isolating a specific quantum of supporting evidence. See Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a particular finding, the finding of the Commissioner is conclusive. See Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987). Therefore, where the evidence is susceptible to more than one rational interpretation, one of which supports the Commissioner's decision, the decision must be affirmed, see Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

# I. THE DISABILITY EVALUATION PROCESS

To achieve uniformity of decisions, the Commissioner employs a five-step sequential evaluation process to determine whether a claimant is disabled. See 20 C.F.R. §§ 404.1520 (a)-(f) and 416.920(a)-(f). The sequential evaluation proceeds as follows:

|  |  |
|---|---|
| Step 1 | Determination whether the claimant is engaged in substantial gainful activity; if so, the claimant is presumed not disabled and the claim is denied; |
| Step 2 | If the claimant is not engaged in substantial gainful activity, determination whether the claimant has a severe impairment; if not, the claimant is presumed not disabled and the claim is denied; |
| Step 3 | If the claimant has one or more severe impairments, determination whether any such severe impairment meets or medically equals an impairment listed in the regulations; if the claimant has such an impairment, the claimant is presumed disabled and the claim is granted; |
| Step 4 | If the claimant's impairment is not listed in the regulations, determination whether the impairment prevents the |

|   | claimant from performing past work in light of the |
|---|---|
| 1 | claimant's residual functional capacity; if not, the claimant |
| 2 | is presumed not disabled and the claim is denied; |

Step 5    If the impairment prevents the claimant from performing past work, determination whether, in light of the claimant's residual functional capacity, the claimant can engage in other types of substantial gainful work that exist in the national economy; if so, the claimant is not disabled and the claim is denied.

See 20 C.F.R. §§ 404.1520 (a)-(f) and 416.920(a)-(f).

To qualify for benefits, the claimant must establish the inability to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted, or can be expected to last, a continuous period of not less than 12 months. See 42 U.S.C. § 1382c(a)(3)(A). The claimant must provide evidence of a physical or mental impairment of such severity the claimant is unable to engage in previous work and cannot, considering the claimant's age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. See Quang Van Han v. Bower, 882 F.2d 1453, 1456 (9th Cir. 1989). The claimant has the initial burden of proving the existence of a disability. See Terry v. Sullivan, 903 F.2d 1273, 1275 (9th Cir. 1990).

The claimant establishes a prima facie case by showing that a physical or mental impairment prevents the claimant from engaging in previous work. See Gallant v. Heckler, 753 F.2d 1450, 1452 (9th Cir. 1984); 20 C.F.R. §§ 404.1520(f) and 416.920(f). If the claimant establishes a prima facie case, the burden then shifts to the Commissioner to show the claimant can perform other work existing in the national economy. See Burkhart v. Bowen, 856 F.2d 1335, 1340 (9th Cir. 1988); Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986); Hammock v. Bowen, 867 F.2d 1209, 1212-1213 (9th Cir. 1989).

/ / /

/ / /

/ / /

/ / /

/ / /

## II.  THE COMMISSIONER'S FINDINGS

Plaintiff applied for social security benefits on January 28, 2013.  See CAR 32.[1]
In the application, plaintiff claims disability began on January 18, 2012.  See id.  Plaintiff's claim
was initially denied.  Following denial of reconsideration, plaintiff requested an administrative
hearing, which was held on October 25, 2016, before Administrative Law Judge (ALJ) K. Kwon.
In a March 6, 2017, decision, the ALJ concluded plaintiff is not disabled based on the following
relevant findings:

1.  The claimant has the following severe impairment(s): bipolar disorder, depressive disorder, degenerative joint disease of the cervical spine and lumbar spine, and headaches;

2.  The claimant does not have an impairment or combination of impairments that meets or medically equals an impairment listed in the regulations;

3.  The claimant has the following residual functional capacity: light work, except she is limited to occasional postural maneuvers (climbing ramps and stairs, balancing, stooping, kneeling, crouching, and crawling) but with no climbing of ropes, ladders, and scaffolds; the claimant is precluded from work at heights or around moving machinery as safety precautions; she is limited to simple, repetitive tasks equivalent to unskilled work with a maximum specific vocational preparation (SVP) of 2 with no public contact;

4.  Considering the claimant's age, education, work experience, residual functional capacity, and vocational expert testimony, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

See id. at 35-48.

After the Appeals Council declined review on June 21, 2018, this appeal followed.

/ / /

/ / /

/ / /

/ / /

/ / /

---

[1]  Citations are the to the Certified Administrative Record (CAR) lodged on December 28, 2018 (ECF No. 10).

# III.  DISCUSSION

In her opening brief, plaintiff argues: (1) the ALJ failed to properly evaluate the opinions of Drs. Mai, Kiefer, and Forman regarding limitations associated with plaintiff's mental impairments; (2) the ALJ failed to properly evaluate plaintiff's statements and testimony; and (3) the ALJ failed to properly evaluate lay witness evidence.

## A.      Evaluation of Medical Opinions

"The ALJ must consider all medical opinion evidence." Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008) (citing 20 C.F.R. § 404.1527(b)).  The ALJ errs by not explicitly rejecting a medical opinion.  See Garrison v. Colvin, 759 F.3d 995, 1012 (9th Cir. 2014).  The ALJ also errs by failing to set forth sufficient reasons for crediting one medical opinion over another.  See id.

Under the regulations, only "licensed physicians and certain qualified specialists" are considered acceptable medical sources.  20 C.F.R. § 404.1513(a); see also Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012).  Where the acceptable medical source opinion is based on an examination, the ". . . physician's opinion alone constitutes substantial evidence, because it rests on his own independent examination of the claimant." Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001).  The opinions of non-examining professionals may also constitute substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record.  See Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002).  Social workers are not considered an acceptable medical source.  See Turner v. Comm'r of Soc. Sec. Admin., 613 F.3d 1217, 1223-24 (9th Cir. 2010).  Nurse practitioners and physician assistants also are not acceptable medical sources.  See Dale v. Colvin, 823 F.3d 941, 943 (9th Cir. 2016). Opinions from "other sources" such as nurse practitioners, physician assistants, and social workers may be discounted provided the ALJ provides reasons germane to each source for doing so.  See Popa v. Berryhill, 872 F.3d 901, 906 (9th Cir. 2017), but see Revels v. Berryhill, 874 F.3d 648, 655 (9th Cir. 2017) (quoting 20 C.F.R. § 404.1527(f)(1) and describing circumstance when opinions from "other sources" may be considered acceptable medical opinions).

/ / /

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. See Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1995). Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual, than the opinion of a non-treating professional. See id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996); Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987). The least weight is given to the opinion of a non-examining professional. See Pitzer v. Sullivan, 908 F.2d 502, 506 & n.4 (9th Cir. 1990).

In addition to considering its source, to evaluate whether the Commissioner properly rejected a medical opinion the court considers whether: (1) contradictory opinions are in the record; and (2) clinical findings support the opinions. The Commissioner may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons supported by substantial evidence in the record. See Lester, 81 F.3d at 831. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by an examining professional's opinion which is supported by different independent clinical findings, the Commissioner may resolve the conflict. See Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995).

A contradicted opinion of a treating or examining professional may be rejected only for "specific and legitimate" reasons supported by substantial evidence. See Lester, 81 F.3d at 830. This test is met if the Commissioner sets out a detailed and thorough summary of the facts and conflicting clinical evidence, states her interpretation of the evidence, and makes a finding. See Magallanes v. Bowen, 881 F.2d 747, 751-55 (9th Cir. 1989). Absent specific and legitimate reasons, the Commissioner must defer to the opinion of a treating or examining professional. See Lester, 81 F.3d at 830-31. The opinion of a non-examining professional, without other evidence, is insufficient to reject the opinion of a treating or examining professional. See id. at 831. In any event, the Commissioner need not give weight to any conclusory opinion supported by minimal clinical findings. See Meanel v. Apfel, 172 F.3d 1111,

/ / /

1113 (9th Cir. 1999) (rejecting treating physician's conclusory, minimally supported opinion); see also Magallanes, 881 F.2d at 751.

At Step 4, the ALJ evaluated the medical opinion evidence of record. See CAR 40-45. Plaintiff challenges the ALJ's evaluation of the opinions of Drs. Mai, Kiefer, and Forman regarding plaintiff's mental impairments.[2]

### 1. Dr. Mai

#### i. The ALJ's Analysis

As to Dr. Mai, the ALJ stated:

> Since about August 2012, the claimant has pursued mental heath care through the Solano County Department of Mental Health. When initially seen, she complained of depressed mood, sleep disturbance, diminished concentration loss of interest, excess worry, fatigue, feelings of guilt, increased energy, auditory hallucinations, poor judgment, racing thoughts, restlessness, and thoughts of suicide. She was diagnosed with bipolar disorder and amphetamine abuse (Exhibit B20F). In November 2013, the claimant was evaluated by Tina Mai, M.D. The claimant complained of mood fluctuations and described not sleeping for days, mood swings, irritability, spending sprees, grandiosity, and racing thoughts. Mental status examination disclosed excess speech, expansive affect, and labile mood (Exhibit B5F/14).
>
> Dr. Mai's subsequent progress notes reflect trials of multiple medications at varying dosages. The claimant reported side effects [and] ineffectiveness of prescribed medications. In March 2014, the claimant reported increased fatigue and loss of motivation. Her complaint of weight gain was believed to be due to medication and inactivity. Dr. Mai further supported the claimant's application for disability indicating that the claimant was not able to work. In April 2014, Dr. Mai noted improvement with an increase in dosage in medication. She further recounted that the claimant had had many jobs with difficulty showing up for work and maintaining work activity due to mood instability. Diagnoses were bipolar disorder and amphetamine dependence that was in early remission. Progress notes include observations and mental status examinations disclosing depressed and irritable mood in May 2014 (Exhibit B20F). In August 2014, Dr. Mai noted the claimant was slightly hypomanic with fact speech, elated mood, and minimal sleep. Examination in October 2014 disclosed the claimant appeared depressed and paranoid. In the next month, Dr. Mai reported that mood was irritable and mixed, suspicious, and tearful. The trials of medications continued and in June 2016, Dr. Mai reported the claimant was less labile although with persistent paranoia, racing thoughts, and mood lability. The claimant also stopped using medications complaining of side effects of leg

---

[2]    At Step 2, the ALJ concluded plaintiff has the severe mental impairments of bipolar disorder and depressive disorder. See CAR 35-36. At Step 4, the ALJ determined these mental impairments limit plaintiff to performing "simple, repetitive tasks equivalent to unskilled work. . . with no public contact." CAR 37.

7

cramping, diarrhea, and ineffectiveness. Dr. Mai's December 2015 progress note indicated a strong support for disability benefits due to two years of mood instability that was of a severe degree in spite of medication. Dr. Mai indicated that the mood swings were visible on medical visits with a depressive disorder and manic symptoms of irritability and agitation (Exhibit B16F/6). In August 2016, Dr. Mai noted that Risperdone had been prescribed and ceased by the claimant. During that visit, it was noted that the claimant complained of decreased sleep, racing thoughts, and mood fluctuation. Invega was prescribed but the claimant did not try the medication (Exhibit B21F).

* * *

. . .Dr. Mai's progress notes indicate that the abnormal clinical signs associated with the bipolar disorder and the rapid cycling of mood swings prevented the claimant from performing sustained work. Although Dr. Mai has provided long-term care and her progress notes document observed manic and depressive phases of the bipolar disorder, the undersigned is not persuaded that the evidence supports Dr. Mai's assessment. Dr. Mai has prescribed trials of medication and there are reported signs of improvement. In September 2015, the claimant reported improvement on Depakote and Latuda. Her mood was considered stable with no side effects from medications. Her sleep was improved. Mental status examination showed sufficient relief of symptoms that Dr. Mai recommended the claimant try volunteer work or vocational rehabilitation for a few hours weekly to get out and establish a routine (Exhibit B16F/13). Dosage of medication was increased and the claimant complained of manic symptoms with irritability, pressured speech, angry mood, and labile affect. Dr. Mai recommended reducing the dosage of medications but the claimant refused to stay on the medications so that Zyprexa and Depakote at an increased dose was prescribed (Exhibit B16F/10). Dr. Mai's recommendation for vocational rehabilitation or volunteer work is inconsistent with her opinion the claimant is unable to perform work activity. Dr. Mai believed the claimant was unable to perform full time work due to the mood swings, however, the undersigned is not persuaded that there is not a medical regimen that would provide sufficient control of the mood swings and related symptoms as is reflected in Dr. Mai's progress notes. Thus, the undersigned does not give controlling weight to Dr. Mai's opinion. It is also noted that although Dr. Mai expressed her opinion on an inability to work, that conclusion is reserved to the Commissioner of Social Security. Moreover, Dr. Mai's progress notes include mental status examinations with minimally abnormal clinical signs that are inconsistent and unsupportive of her opinion.

CAR 40-42.

/ / /

/ / /

/ / /

/ / /

ii.     Plaintiff's Contentions

Plaintiff first summarizes evidence from Dr. Mai as follows:

Dr. Mai is a psychiatrist at Solano County Health and Social Services who has treated Plaintiff's bipolar and post-traumatic stress disorders since 2012. The record contains approximately 17 reports from separate treatment visits in which Dr. Mai examined Plaintiff, in addition to mental health therapy other Solano County professionals provided to Plaintiff. *See* AR at 708-711, 1151-58, 1160-61, 1162-63, 1255-74, 1277-96; *see also* AR at 11-12, 1159, 1275-76, 1297-99. Dr. Mai's treatment reports are graphic as to the history of trauma Plaintiff has endured throughout her life and the lasting effects. Those effects, in Dr. Mai's strong opinion, make it so Plaintiff is unable to maintain competitive work.

Despite the county's policy that its providers not prepare or submit documentation in connection with patient disability applications, Dr. Mai repeatedly wrote that Plaintiff's severe mood swings between manic and depressive periods preclude full-time employment. *See* AR at 1153. Following a December 11, 2015 treatment visit, Dr. Mai wrote that Plaintiff's "functioning is severely compromised"; her mood visibly fluctuates between encounters; she cannot attend to "basic self-care" during depressive swings and is "extremely irritable and agitated" when manic. *Id*. Dr. Mai further wrote "it would not be possible for her to maintain any form of employment with the level of her mood fluctuations and functioning." *Id*.

On April 6, 2017, about a month after the ALJ's decision, Dr. Mai wrote the ALJ to address his interpretation of Dr. Mai's treatment notes and opinion. *See* AR at 28. Dr. Mai reiterated her opinions that Plaintiff cannot work and expressed concern that the ALJ misunderstood Plaintiff's condition and the treatment reports. She further stated Plaintiff "is extremely irritable and extremely depressed most of the times" and "would not be able to meet the demands of showing up to work or having to socialize with others." *Id*. Dr. Mai also invited the ALJ to contact her if additional clarification was needed.

On May 2, 2018, Dr. Mai submitted another letter; this time to Social Security's Appeals Council. AR at 11. Dr. Mai summarized her treatment since 2012 and sought to provide additional details as to her opinions of Plaintiff's work limitations. Among other things, Dr. Mai explained that during manic periods, Plaintiff presents "with expansive and agitated mood, loud, pressured speech, [and] inability to concentrate." *Id*. During these periods, Plaintiff "is unable to interact with others without getting [into] verbal and physical conflicts . . . has very poor judgment and impulsivity . . . including history of physical assaults . . . getting out of car to confront others on streets due to agitation during these episodes." *Id*. "During her depressive bouts, [Plaintiff] . . . has a hard time keeping up with activities of daily living, [for example is] unable to get out of bed, unable to get out of house, no energy, not showering, eating." *Id* [sic]. Dr. Mai again advised that Plaintiff "is totally disabled from her illness" and volunteered to provide Social Security further information as needed. AR at 12.

///

///

9

As to the ALJ's rationale for not giving Dr. Mai's opinions controlling weight, plaintiff argues:

> . . . [T]he ALJ gave two reasons for rejecting Dr. Mai's opinions. First, the ALJ reasoned that Dr. Mai's opinions are inconsistent with her treatment reports, which the ALJ characterized as showing improvement with medication and normal clinical examinations, as well as encouragement from Dr. Mai that Plaintiff volunteer a few hours per week. Second, the ALJ reasoned that some other "medical regimen" would provide sufficient control of Plaintiff's symptoms to allow her to work. These reasons are legally erroneous and not supported by substantial evidence.
>
> As an initial matter, the Appeals Council received, discussed, and included in the record Dr. Mai's post-hearing letters, dated April 6, 2017 and May 2, 2018. *See* AR at 1-2, 11-12, 28. Thus, the Court must consider Dr. Mai's additional opinions and clarifications in determining if Social Security's final administrative decision is supported by substantial evidence. *Brewes v. Commissioner of Social Security*, 681 F.3d 1157, 1159-60 (9th Cir. 2012) [holding "when a claimant submits evidence for the first time to the Appeals Council, which considers that evidence in denying review of the ALJ's decision, the new evidence is part of the administrative record, which the district court must consider in determining whether the Commissioner's decision is supported by substantial evidence"].
>
> Regarding the ALJ's reasoning that an alternative "medical regimen" would control Plaintiff's symptoms and allow for sustained, full-time employment, this is erroneous as a matter of law. The ALJ's personal, lay opinion is insufficient to question a treating psychiatrist's conclusions. *Schultz v. Colvin*, 32 F. Supp.3d 1047, 1060 (N.D. Cal. 2014) [citing *Taylor v. Comm'r of SSA*, 659 F.3d 1228, 1235 (9th Cir. 2011)]. This is particularly true where, as in this case, the ALJ does not attempt to specify what alternative treatment purportedly exists that would resolve Plaintiff's severe mood swings and allow her to consistently bathe, leave her house, interact effectively with others, and meet production requirements at work on a sustained basis.
>
> Dr. Mai's records reflect an intensive, prolonged course of treatment, especially for a county clinic. In addition to therapy Plaintiff is prescribed the strongest psychotropic medications available, which Dr. Mai must continually reassess and manage due to side effects and their limited effectiveness. The ALJ is not qualified to speculate, in the most general terms, that Dr. Mai has overlooked some treatment method which would cure Plaintiff. *See Banks v. Barnhart*, 434 F. Supp.2d 800, 805 (C.D. Cal. 2006) ["ALJ cannot arbitrarily substitute his own judgment for competent medical opinion [], and he must not succumb to the temptation to play doctor and make his own independent medical findings."] [internal quotation marks omitted]; *see, also, Tackett v. Apfel*, 180 F.3d 1094, 1102-03 (9th Cir. 1999) [ALJ may not substitute his own interpretation of the medical evidence for the opinion of medical professionals]; *Morales v. Apfel*, 225 F.3d 310, 319 (3d Cir. 2000) [same]. The ALJ's reasoning in this respect is neither specific nor legitimate and thus is erroneous.
>
> The ALJ's other reason for rejecting Dr. Mai's opinions is also reversible error. Specifically, the ALJ's reasoning that Dr. Mai's opinions are contradicted by her own treatment reports, which purportedly show improvement, normal clinical examinations, and encouragement from Dr.

Mai that Plaintiff work, is a severe distortion of the record. First, the ALJ cites a September 11, 2015 examination report in which Plaintiff reported stable mood on Latuda and Depakote, without negative side effects, and that she was sleeping much better. *See* AR at 41 [citing AR at 1160]. Dr. Mai also reported that she discussed with Plaintiff volunteering a few hours per week to establish a routine and get out of the house, which the ALJ concluded is inconsistent with Dr. Mai's opinion Plaintiff cannot work. However, in the very same sentence of the same treatment report Dr. Mai stated: "patient would not able [*sic*] to obtain or maintain normal work because of her current mood and having full time work or even parttime [*sic*] right now would not [be] recommended[.]" AR at 1160. Dr. Mai also stated she observed Plaintiff as having an anxious and depressed mood, and that while stable, she remained symptomatic. *Id*. The ALJ never acknowledged or addressed these portions of the report he cited, and it is plainly untrue that on this date Dr. Mai believed Plaintiff to be able to work.

Moreover, the ALJ's analysis lacks for context in that a few weeks prior Dr. Mai reported Plaintiff appeared in a "hypomanic phase" with bright makeup and clothing, irritable and angry mood, and a desire "to fight others[.]" AR at 1162. Dr. Mai further recorded that clinically Plaintiff presented with auditory hallucinations, reports of racing thoughts, and unbearable restless leg syndrome while on Seroquel. *Id*. Similarly, ten days after the September 11, 2015 examination report the ALJ relies on, Plaintiff called the county clinic to advised she stopped taking her medications due to side effects that involved cold sweats, restlessness, fever, anxiety, and increased heart rate. AR at 1159. An appointment with Dr. Mai was then scheduled on an urgent basis.

At that next appointment, Dr. Mai reported Plaintiff was irritable, angry, and loud with pressured speech. AR at 1157. Plaintiff refused to continue Latuda at any dosage, and Dr. Mai increased her Depakote dosage, restarted her on Zyprexa, prescribed Clonazepam with instructions not to combine with Zyprexa if feeling too sedated, and further advised Plaintiff to immediately contact the county clinic if these medications were not effective within three days. *Id*. Aside from the foregoing, the ALJ did not cite to any other portions of the record to reject Dr. Mai's opinions. *See* AR at 41-42. And these reports in no way reflect improvement or stability as to Plaintiff's symptoms or that Dr. Mai reported an ability to work, as the ALJ somehow concluded.

Moreover, in a mental illness case, the ALJ's isolation of a single treatment visit to discredit a treating doctor's opinion is a fallacious practice which circuit courts have long criticized. *See Scott v. Astrue*, 647 F.3d 734, 740 (7th Cir. 2011) ["the very nature of bipolar disorder is that people with the disease experience fluctuations, so any single notation that a patient is feeling better or has had a 'good day' does not imply the condition has been treated"]; *Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014) ["Reports of 'improvement' in the context of mental health issues must be interpreted with an understanding of the patient's overall well-being and the nature of her symptoms."]; *Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001) ["[The treating physician's] statements must be read in context of the overall diagnostic picture he draws."]; *Hutsell v. Massanari*, 259 F.3d 707, 712 (8th Cir. 2001) ["We also believe that the Commissioner erroneously relied too heavily on indications in the medical record that Hutsell was 'doing well,' because doing well for the purposes of a treatment program has no necessary relation to a claimant's

ability to work or to her work-related functional capacity."] [internal citations omitted].

Thus, beyond lacking any evidentiary support, the ALJ's only other reason for rejecting Dr. Mai's opinions should not be held free of legal error. Plaintiff respectfully asks the Court reverse Social Security's final decision because the ALJ erroneously rejected Dr. Mai's medical opinions.

        iii.    <u>Disposition</u>

Documentation from Dr. Mai is contained in the record at the following exhibits:

| | |
|---|---|
| Exhibit B5F | Solano County Mental Health records dated August 21, 2013, through December 23, 2013.  <u>See</u> CAR 695-756. |
| Exhibit B16F | Solano County Health and Social Services records dated August 26, 2015, through January 15, 2016.  CAR 1148-1171. |
| Exhibit B20F | Solano County records dated August 23, 2012, through July 15, 2014.  CAR 1255-1299. |

The record also contains evidence related to Dr. Mai submitted after the October 2016 administrative hearing.  Specifically, the record contains Dr. Mai's April 6, 2017, letter to the ALJ.  <u>See</u> <u>id.</u> at 28.  The record also contains Dr. Mai's May 2, 2018, letter, submitted on May 22, 2018, by plaintiff's attorney in support of plaintiff's request for review by the Appeals Council. <u>See</u> <u>id.</u> at 9-14.

As demonstrated by the summaries provided by both the ALJ and plaintiff, Dr. Mai's treatment notes at Exhibits B5F, B16F, and B20F describe clinical findings.  They do not describe specific medical opinions concerning plaintiff's ability to engage in the mental demands of work.  Plaintiff describes these records as a "graphic history" of plaintiff's longitudinal mental health care provided by Dr. Mai, and the court agrees.  Notably, plaintiff does not identify any specific work-related medical opinions expressed by Dr. Mai contained in the treatment records.

In her April 6, 2017, letter, Dr. Mai reported her concern that "my documentation notes might have been misinterpreted" at the hearing.  <u>Id.</u> at 28.  Dr. Mai stated that plaintiff suffers from severe mood fluctuations and that plaintiff "would not be able to function or work due to her mental health illness."  <u>Id.</u>  Dr. Mai also stated that plaintiff's "mood fluctuation is such that she is extremely irritable and extremely depressed most of the times."  <u>Id.</u>  Dr. Mai

concluded plaintiff "would not be able to meet the demands of showing up to work or having to socialize with others." Id.

In her May 2, 2018, letter, Dr. Mai reported to follow up on a letter written in 2017. See CAR 11. Dr. Mai described plaintiff's treatment for bipolar disorder, post-traumatic stress disorder, and generalized anxiety. See id. at 11-12. According to Dr. Mai, plaintiff was unable in the past year to "attempt any substantial gainful activity" due to plaintiff's "inability to maintain psychiatric stability." Id. at 11. Dr. Mai concluded: ". . .[I]t is my professional opinion that Ms. Saltzman has severe mental health impairment, primarily from her Bipolar illness which is severe and lifelong and that she is totally disabled from her illness." Id. at 12.

With respect to Dr. Mai's opinions that, in general, plaintiff is unable to work, the court affirms the ALJ's determination that such opinions are not entitled to controlling weight because the ultimate question of disability is reserved to the Commissioner. See Matthews v. Shalala, 10 F.3d 678, 680 (9th Cir. 1993). Nonetheless, while the ALJ is not bound by a treating doctor's opinion on the ultimate issue of disability, the ALJ may not reject such opinions without providing sufficient reasons for doing so. See id.; see also Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998) (stating that the "reasons for rejecting a treating doctor's credible opinion on disability are comparable to those required for rejecting a treating doctor's medical opinion").

Here, the ALJ has failed to do so. According to the ALJ, Dr. Mai's recommendation that plaintiff engage in volunteer work or vocational rehabilitation is inconsistent with the doctor's opinion that plaintiff cannot work. The court disagrees. As the ALJ noted, "Dr. Mai recommended the claimant try volunteer work or vocational rehabilitation for a few hours weekly to get out and establish a routine (Exhibit B16F/13)." CAR 41. Contrary to the ALJ's assessment, Dr. Mai's recommendation that plaintiff engage in some work-related activities for only a few hours per week is not inconsistent with the doctor's conclusion that plaintiff is unable to sustain full-time work.

/ / /

/ / /

/ / /

As to the April 2017 opinion, which was rendered after the ALJ's March 2016 hearing decision, the court cannot fault the ALJ's failure to comment. The court, however, is troubled by the lack of consideration of Dr. Mai's opinion, as expressed in April 2017, that plaintiff is unable to socialize with anyone in a work setting. Specifically, Dr. Mai opined that plaintiff would not be able to socialize with others, which must include co-workers, supervisors, and the public. While the ALJ concluded plaintiff cannot engage in contact with the public, there has been no consideration of an inability to interact with co-workers and/or supervisors. The matter will be remanded for consideration of Dr. Mai's opinion that plaintiff is unable to interact with anyone in a work setting.

2.    Dr. Kiefer

i.    The ALJ's Analysis

As to Dr. Kiefer's opinions, the ALJ stated:

> The claimant underwent a consultative psychological evaluation by John Kiefer, Psy.D. In his July 9, 2013, report, Dr. Kiefer noted the claimant's complaint of a bipolar disorder. She informed Dr. Kiefer that she had self-medicated with cocaine and methamphetamine but had been clean of all illicit substances for four or five years. The claimant reported a history of three past suicide attempts. In the course of the interview, the claimant stated that she last used methamphetamines about one month earlier and marijuana a week before the examination. On mental status examination, mood considered manic four days earlier and currently depressed based on the claimant's statement. Affect was tearful and broad. Dr. Kiefer diagnosed a bipolar disorder, cocaine and alcohol abuse that were in remission, methamphetamine abuse, and ruled out cannabis abuse. In Dr. Kiefer's opinion, the "likelihood of the claimant's mental condition improving within the next 2 months is poor unless the claimant was to maintain abstinence from recreational substances" (Exhibit B2F/5). Dr. Kiefer believed the claimant was cognitively intact with an ability to understand, remember, and carry out very short and simple instructions was [sic] well as detailed and complex instructions. The ability to maintain attention and concentration was considered good. Fair abilities were noted for accepting instruction from a supervisor and responding appropriately, interacting with coworkers, sustaining an ordinary routine without special supervision, completing a normal workday/workweek without interruptions at a consistent pace, and dealing with various changes in a work setting. The likelihood of emotional[] deterioration in a work environment is estimated to be high. Based on the mental status examination, there was no evidence that the claimant was engaged in substance abuse at the time of the evaluation (Exhibit B3F).

/ / /

/ / /

Partial weight is accorded to Dr. Kiefer's opinion regarding the claimant's functional capacity. The undersigned finds that Dr. Kiefer's clinical findings support his assessment except for the high degree of likelihood that the claimant would suffer emotional deterioration in a work setting. While the claimant has a history of multiple jobs, she was able to maintain such work activity. The undersigned relied on Dr. Kiefer's opinion to find the claimant able to perform simple, repetitive tasks and the preclusion to work involving public contact.

CAR 42.

ii.    Plaintiff's Contentions

Plaintiff asserts the ALJ did not provide a legitimate reason to reject Dr. Kiefer's opinions. According to plaintiff:

. . . The ALJ's deduction that Plaintiff is capable of working currently because she worked previously indicates an analysis driven by a predetermined result rather than a result arrived at by adhering to the applicable legal standard. Indeed, the ALJ's logic would misconstrue the Social Security Act to disqualify any person with a mental illness who has previously held a job. The Court cannot accept such a statutory or regulatory construction. *See Durso v. Berryhill*, case no. 2:16-cv-2290-DB, 2018 U.S. Dist. LEXIS 47658 at *27 (E.D. Cal. March 21, 2018).
Moreover, while specific and legitimate grounds may exist to properly dismiss Dr. Kiefer's opinions, the ALJ did not provide any. The Court on review may not identify reasons the ALJ failed to articulate. *See Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) [citing *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) ["We are constrained to review the reasons the ALJ asserts."]; *Robbins v. SSA*, 466 F.3d 880, 884 n. 2 (9th Cir. 2006) [citing *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947) and "emphasizing the 'fundamental rule of administrative law' that 'a reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency"]. Because the Court is not permitted to engage in the type of post hoc reasoning required to uphold the ALJ's treatment of this consulting doctor's opinion, Social Security's final decision should be reversed. *See also* AR at 94 [VE testifying that a monthly confrontation at work would preclude all employment].

iii.    Disposition

Here, the ALJ gave "partial weight" to Dr. Kiefer's opinion, rejecting the doctor's opinion that plaintiff would experience a high degree of likelihood of emotional deterioration in a work setting. See CAR 42. According to the ALJ, this opinion was rejected because plaintiff "has a history of multiple jobs" which she was able to perform. Id. The court finds no logical connection between plaintiff's ability to perform jobs prior to the alleged onset date and the

ALJ's rejection of Dr. Kiefer's opinion that plaintiff would likely experience emotional deterioration at work.[3]  The court finds, therefore, that plaintiff's objection to the ALJ's analysis of Dr. Kiefer's opinions is well taken.  The matter will be remanded for further consideration of Dr. Kiefer's opinions.

                    3.      Dr. Forman

                        i.      The ALJ's Analysis

        As to Dr. Forman, the ALJ stated:

> A consultative psychological evaluation was conducted by Jennifer Forman, Ph.D.  Dr. Forman interviewed the claimant and, following mental status examination, diagnosed a bipolar disorder.  In terms of the claimant's functional abilities, Dr. Forman indicated that the ability to follow simple and detailed/complex instructions was unimpaired.  The ability to maintain adequate pace or persistence to perform one or two-step simple repetitive tasks was unimpaired although mildly impaired for complex tasks.  In Dr. Forman's estimation, the ability to withstand the stress of an 8-hour workday was mildly to moderately impaired.  In assessing the ability to interact appropriately with co-workers, supervisors, and the public on a regular basis, Dr. Forman noted a mild to moderate impairment.  The ability to adapt to changes, hazards, or stressors in the workplace setting was mildly to moderately impaired.  According to Dr. Forman, the mild to moderate limitations were due to bipolar symptoms with diminished memory/concentration.  Dr. Forman further indicated that the claimant was able to work for three to six hours per day performing simple tasks and in a low stress environment (Exhibit B14F).

> Partial weight is accorded Dr. Forman's opinion.  The undersigned again relied on the consultative evaluation to find the claimant capable of simple, repetitive tasks.  While Dr. Kiefer noted a high degree of emotional deterioration in a work setting, Dr. Forman noted a mild to moderate level of ability to withstand the stress of an 8-hour workday.  The undersigned agrees that the claimant would experience some degree of stress but only for more complex and detailed tasks or working with the public.  In her report, Dr. Forman opined that the claimant was able to work for only three to six hours per day at simple tasks in low stress environments but the undersigned disagrees.  Dr. Forman did not provide any basis for such opinion that is inconsistent with the history of work activity performed on a full time and sustained basis in spite of the affective disorder.

        CAR 42-43.

/ / /

/ / /

_____

[3]      In this regard, the record reflects the ALJ's finding that plaintiff has not engaged in substantial gainful activity since the alleged onset date.  See CAR 34.

1        ii.      Plaintiff's Contentions

2            As with Dr. Kiefer, plaintiff argues the ALJ's rationale for rejecting Dr. Forman's

3    opinion is equally flawed.  Plaintiff contends:

4                . . . [T]he ALJ rejected Dr. Forman's opinions for the same reason
             given to reject Dr. Kiefer's; that Plaintiff previously worked. This reason
5            is equally illegitimate as to Dr. Forman as it is to Dr. Kiefer.
                In addition, Plaintiff's work history further invalidates the ALJ's
6            reasoning. Plaintiff's most recent job, which she held from 2008 to 2012,
             was part time and she only worked 4 hours per day. *See* AR at 382-383,
7            458, 463; *see also* AR at 354. Plaintiff's work history therefore supports
             rather than detracts from Dr. Forman's opinion that Plaintiff is unable to
8            work an 8-hour day on a sustained basis. Beyond being illegitimate, the
             ALJ's reasoning in this regard is not supported by substantial evidence.
9            The Court should reverse.

10        iii.      Disposition

11            As with Dr. Kiefer's opinion, the ALJ rejected portions of Dr. Forman's opinion

12    based on plaintiff's ability to maintain work prior to the alleged onset date.  For the reasons

13    discussed above, the court finds this rationale insufficient.  The matter will be remanded for

14    further consideration of Dr. Forman's opinions.

15    **B.    Plaintiff's Credibility**

16            The Commissioner determines whether a disability applicant is credible, and the

17    court defers to the Commissioner's discretion if the Commissioner used the proper process and

18    provided proper reasons.  See Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1996).  An explicit

19    credibility finding must be supported by specific, cogent reasons.  See Rashad v. Sullivan, 903

20    F.2d 1229, 1231 (9th Cir. 1990).  General findings are insufficient.  See Lester v. Chater, 81 F.3d

21    821, 834 (9th Cir. 1995).  Rather, the Commissioner must identify what testimony is not credible

22    and what evidence undermines the testimony.  See id.  Moreover, unless there is affirmative

23    evidence in the record of malingering, the Commissioner's reasons for rejecting testimony as not

24    credible must be "clear and convincing."  See id.; see also Carmickle v. Commissioner, 533 F.3d

25    1155, 1160 (9th Cir. 2008) (citing Lingenfelter v Astrue, 504 F.3d 1028, 1936 (9th Cir. 2007),

26    and Gregor v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006)).

27    / / /

28    / / /

If there is objective medical evidence of an underlying impairment, the

Commissioner may not discredit a claimant's testimony as to the severity of symptoms merely

because they are unsupported by objective medical evidence.  See Bunnell v. Sullivan, 947 F.2d

341, 347-48 (9th Cir. 1991) (en banc).  As the Ninth Circuit explained in Smolen v. Chater:

> The claimant need not produce objective medical evidence of the
> [symptom] itself, or the severity thereof.  Nor must the claimant produce
> objective medical evidence of the causal relationship between the
> medically determinable impairment and the symptom.  By requiring that
> the medical impairment "could reasonably be expected to produce" pain or
> another symptom, the Cotton test requires only that the causal relationship
> be a reasonable inference, not a medically proven phenomenon.
>
> 80 F.3d 1273, 1282 (9th Cir. 1996) (referring to the test established in
> Cotton v. Bowen, 799 F.2d 1403 (9th Cir. 1986)).

The Commissioner may, however, consider the nature of the symptoms alleged,

including aggravating factors, medication, treatment, and functional restrictions.  See Bunnell,

947 F.2d at 345-47.  In weighing credibility, the Commissioner may also consider: (1) the

claimant's reputation for truthfulness, prior inconsistent statements, or other inconsistent

testimony; (2) unexplained or inadequately explained failure to seek treatment or to follow a

prescribed course of treatment; (3) the claimant's daily activities; (4) work records; and (5)

physician and third-party testimony about the nature, severity, and effect of symptoms.  See

Smolen, 80 F.3d at 1284 (citations omitted).  It is also appropriate to consider whether the

claimant cooperated during physical examinations or provided conflicting statements concerning

drug and/or alcohol use.  See Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002).  If the

claimant testifies as to symptoms greater than would normally be produced by a given

impairment, the ALJ may disbelieve that testimony provided specific findings are made.  See

Carmickle, 533 F.3d at 1161 (citing Swenson v. Sullivan, 876 F.2d 683, 687 (9th Cir. 1989)).

Regarding reliance on a claimant's daily activities to find testimony of disabling

pain not credible, the Social Security Act does not require that disability claimants be utterly

incapacitated.  See Fair v. Bowen, 885 F.2d 597, 602 (9th Cir. 1989).  The Ninth Circuit has

repeatedly held that the ". . . mere fact that a plaintiff has carried out certain daily activities . . .

does not . . .[necessarily] detract from her credibility as to her overall disability."  See Orn v.

Astrue, 495 F.3d 625, 639 (9th Cir. 2007) (quoting Vertigan v. Heller, 260 F.3d 1044, 1050 (9th Cir. 2001)); see also Howard v. Heckler, 782 F.2d 1484, 1488 (9th Cir. 1986) (observing that a claim of pain-induced disability is not necessarily gainsaid by a capacity to engage in periodic restricted travel); Gallant v. Heckler, 753 F.2d 1450, 1453 (9th Cir. 1984) (concluding that the claimant was entitled to benefits based on constant leg and back pain despite the claimant's ability to cook meals and wash dishes); Fair, 885 F.2d at 603 (observing that "many home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication"). Daily activities must be such that they show that the claimant is ". . .able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting." Fair, 885 F.2d at 603. The ALJ must make specific findings in this regard before relying on daily activities to find a claimant's pain testimony not credible. See Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005).

### 1.    The ALJ's Analysis

At Step 4, to determine residual functional capacity the ALJ evaluated the credibility of plaintiff's statements and testimony concerning the nature and severity of her symptoms and limitations. See CAR 38-41, 45-46. The ALJ stated:

> In disability reports prepared by the claimant, she complained of degenerative changes in the spine, depression, a bipolar disorder, headaches, memory problems, difficulty with remembering numbers (Exhibits B2E and B5E). She described back and neck pain, a need to walk after sitting for about an hour, lifting no more than 30 pounds, and an inability to perform overhead activity. According to the claimant, she suffered emotional outbursts, fear and distrust of other[s], and mood swings that she believed interfered with her ability to work. The claimant alleges that she is unable to pursue daily activities on a regular basis that supports her in ability to perform full time work activity. She [states] that she requires the ability to sit with periods of walking to relieve her back pain and stiffness. In May 2013, she reported that she did no sweeping, mopping, vacuuming, cleaning windows, or lifting (Exhibit B5E).
>
> At the hearing, the claimant testified that she suffers mood swings manifested by depression, anger, and rage. She complained of pain in her lower and mid back and neck. She uses a TENS unit that provides some relief and has undergone physical therapy for her pain. She expressed frustration at not receiving psychotherapy. She described difficulty getting up to go to work due to the depression that she attributed to the demise of her grandmother. On a typical day, she feeds her two dogs and

two cats, attends appointments, watches movies, and reads. She stated that she enjoyed painting on clay pots and caring for her flowers. She does her own laundry and is independent in caring for her personal needs. The claimant testified that she is able to cook, goes to dinner once a week with her mother, and drives.

* * *

With respect to the claimant's subjective complaints, the undersigned finds there are medically determined impairments that could be expected to cause the symptoms alleged. The undersigned further finds that the alleged intensity, persistence, and functionally limiting effects are not entirely consistent with the evidence as a whole to further restrict the finding of functional capacity.

The claimant has pursued medical care and psychological treatment for her symptoms, however, the type of care received has been conservative and not of a level to support the degree of symptoms and limitations claimed. She has been prescribed pain medication and physical therapy for her musculoskeletal pain. The diagnostic test results and abnormal clinical signs do not disclose any serious neurological or other compromise to validate the severe symptoms and limitations claimed. Dr. Mai has provided ongoing care with trials of medications. Her progress notes show some response to treatment and, except for abnormal mood swings, unremarkable signs on mental status examination that do not corroborate the severe emotional symptoms and resulting functional limitations alleged. The medical opinions are evaluated above and do not support the claimant's allegations that her symptoms preclude work activity.

The claimant urges that she is intolerant of prolonged standing or sitting without change of position every hour. She complains of chronic and severe musculoskeletal pain and headaches. The medical records, however, do not document frequent medical visits with aggressive medical attention consistent with her complaints. She complains of severe mood swings, irritability, anger, and rage but Dr. Mai's record [sic] show some response to treatment that discounts the claimant's statements.

The claimant reports daily activities. She is independent in her ability to care for her personal hygiene and needs. She pursues her hobby of caring for gardening – flowers and caring for her pets on a regular basis. She testified that she enjoys painting clay pots. According to the claimant, she is able to complete household chores. While these activities may not be done on a full time basis, they nonetheless show a retained ability that discounts the severe limitations described by the claimant.

The undersigned observed at the hearing that the claimant appeared quite dramatic in her presentation. From her testimony and the documentary evidence, it appears she has experienced multiple stressors including the demise of her grandmother, sexual abuse, and dissolution of marriage, but her treating sources and consultants do not indicate a significant functional loss. The claimant stated that she does not take prescribed medications due to side effects but this is mainly related to the medications for her emotional symptoms since she has taken medications for her musculoskeletal pain. She testified that she did not continue working, in

part, because she received an inheritance from grandmother. She was less than satisfied with treatment by her orthopedist, Dr. Nissen, and requested referral to another specialist but it appears she continued under Dr. Nissen's care through at least October 2016. In spite of her described chaotic life, the claimant is highly independent in her daily activities. Thus, the undersigned finds that the claimant's allegations are not entirely consistent with the evidence as a whole.

CAR 38, 45-46.

2.    Plaintiff's Contentions

Plaintiff argues:

In this case, the ALJ found that Plaintiff's medically determinable impairments could be expected to cause the alleged symptoms. AR at 45. Thus, because there is no evidence in the record of malingering, the ALJ was required to provide "specific, clear and convincing reasons," supported by substantial evidence, to reject Plaintiff's testimony regarding the severity of her symptoms. *See Lingenfelter*, 504 F.3d at 1035-36; *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012).

In disregarding Plaintiff's testimony, the ALJ gave the following reasons: (i) Plaintiff's treatment has involved "conservative" care only; (ii) the medical evidence and opinions "show some response to treatment" and are not consistent with Plaintiff's claims; (iii) her daily activities are inconsistent with her claims; and (iv) she "appeared quite dramatic in her presentation" at the ALJ hearing. *See* AR at 45-46. On the present record, the ALJ's reasons for rejecting Plaintiff's testimony are erroneous.

First, Plaintiff's treatment has not been conservative. Plaintiff's mental health treatment involves powerful prescription medications, which doctors continually adjust due to side effects and varying effectiveness. The medications Plaintiff is prescribed to treat bipolar disorder have included sertraline (Zoloft), oxcarbazepine (Trileptal), bupropion (Wellbutrin), lamotrigine (Lamictal), ziprasidone (Geodon), quetiapine (Seroquel), aripiprazole (Abilify), clonazepam (Klonopin), trazodone, diazepam (Valium), Depakote (valproic acid), Zyprexa (olanzapine), and Latuda (lurasidone). *See, e.g.*, AR at 1151-52, 1153-54 1155-56, 1157-58, 1159, 1160-61, 1162-63, 1164-66, 1259, 1264, 1265-69, 1270-73, 1277-80, 1281-84, 1285-88, 1289-91, 1293-96. Courts specifically have recognized that the prescription of just one or a few of these medications is not "conservative" treatment in a Social Security case. *See Benjamin v. Covlin*, 2014 U.S. Dist. LEXIS 126168 at *9 (C.D. Cal. Sept. 9, 2014) [citing *Garden v. Colvin*, 2014 U.S. Dist. LEXIS 27725 (C.D. Cal. Mar. 4, 2014); *Mason v. Colvin*, 2013 U.S. Dist. LEXIS 133727 (E.D. Cal. Sept. 17, 2013); *Gentry v. Colvin*, 2013 U.S. Dist. LEXIS 168342 (E.D. Cal. Nov. 26, 2013).

Further, the ALJ did not identify what additional treatment he expects a disabled person in Plaintiff's position would obtain. This indicates the ALJ relied on his own unqualified lay opinion in characterizing Plaintiff's treatment as "conservative." *See Schultz v. Colvin*, 32 F. Supp.3d 1047, 1060 (N.D. Cal. 2014). Such reasoning is particularly unconvincing in that the record reflects Plaintiff has limited resources, lost insurance coverage at certain times, and otherwise lacked access to healthcare services beyond the county clinic during the relevant period. *See* AR at 1162, 1280, 1284, 1291, 1293; *see also* ECF doc. #2.

21

The ALJ did not provide clear and convincing grounds, supported by substantial evidence, to reject Plaintiff's testimony based on a purportedly conservative course of treatment. *See, also, Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 2014) ["it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation"] [quoting *Blankenship v. Bowen*, 874 F.2d 1116, 1124 (6th Cir. 1989)].

Second, there is no evidence to support the ALJ's reasoning that Plaintiff is not credible on the grounds that treatment reports reflect improvement in her symptoms. This is the same reason the ALJ gave to reject Dr. Mai's opinions that Plaintiff is unable to work. As detailed above, there is no rational basis to characterize the medical evidence in this case as showing improvement or control in Plaintiff's manic depression. *See* 708-711, 1151-58, 1160-61, 1162-63, 1255-74, 1277-96; *see, also, Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) ["[T]he ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints."].

The few references in treatment reports to symptoms being "stable" or "doing better" are, at the very most, isolated instances of improvement which as a matter of law the ALJ erred in relying on. *See Garrison v. Colvin*, 759 F.3d 995, 1016-1018 (9th Cir. 2014). In *Garrison*, the Ninth Circuit reversed an adverse credibility finding based on the same reasoning the ALJ provided in Plaintiff's case. . . . The ALJ in this case failed to acknowledge the nature of Plaintiff's impairment and interpreted the briefest of mentions of improvement in treatment reports out of context. The overall record of treatment in no way supports the ALJ's conclusion, and his approach prejudiced Social Security's final decision.

Third, the ALJ stated Plaintiff's daily activities are inconsistent with her claims. However, the Ninth Circuit "has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities does not in any way detract from her credibility as to her overall disability." *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) [quoting *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001) [ellipsis omitted]. Rather, a social security claimant's activities of daily living may discredit her testimony regarding symptom severity only when (i) the activities "meet the threshold for transferable work skills" or (ii) the activities contradict her testimony. *See id.* [citing *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)]. Here, the ALJ failed to engage meaningfully with either aspect of this standard.

As to transferable work skills, the ALJ specifically found that transferability of skills was "not material" to this case. AR at 47; *see also Schultz v. Colvin*, 32 F. Supp.3d 1047, 1059 (N.D. Cal. 2014). In addition, aside from stating a conclusion, the ALJ did not explain how the basic daily activities he identified translate to competitive work skills. The few routine activities Plaintiff attempts to get through a day do not rise to the level of transferable work skills, as the agency's own regulations recognize. *See* 20 C.F.R. § 404.1527(c) [setting forth the agency does not generally consider "activities like taking care of yourself, household tasks, hobbies, therapy, school attendance, club activities, or social programs" to be substantial gainful activities]; *see also Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) [holding "disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations"] [citations omitted].

/ / /

As to contradiction, the ALJ does not identify any specific reason, let alone a clear and convincing reason, why Plaintiff's account of her activities of daily living contradict her account of her symptoms. In fact, alongside discrediting Plaintiff, the ALJ expressly acknowledged Plaintiff's activities are not analogous to the level of activity required for full-time work. *See* AR at 46 ["While these activities may not be done on a full time basis . . ."]. Moreover, the ALJ does not acknowledge that Plaintiff only performs these limited activities, like painting clay pots and sitting in the garden, in between depressive periods where she does not get out of bed for days at a time. This selective consideration of the evidence distorts the record and is legal error. *See Williams v. Colvin*, 2015 U.S. Dist. LEXIS 96428 at *18 (C.D. Cal. July 23, 2015) ["An ALJ may not cherry-pick evidence to support the conclusion that a claimant is not disabled, but must consider the evidence as a whole in making a reasoned disability determination."] [citing *Holohan v. Massanari*, 246 F.3d 1195, 1207 (9th Cir. 2001)]. There is not substantial evidence in this case that Plaintiff's activities contradict her testimony.

Finally, the ALJ discredited Plaintiff based upon his own observation that she "appeared quite dramatic in her presentation" at the ALJ hearing. AR at 46. This general, speculative opinion from the ALJ is not a valid or clear and convincing reason to reject Plaintiff's testimony overall. *See Perminter v. Heckler*, 765 F.2d 870, 872 (9th Cir. 1985) ["The ALJ's reliance on his personal observations of [claimant] at the hearing has been condemned as 'sit and squirm' jurisprudence."]. The ALJ's improper lay person observations are particularly inappropriate and unconvincing in a case of extreme mental illness.

The fact is no doctor who treated Plaintiff disbelieved her complaints, nor did any of the five witnesses who have personal knowledge of Plaintiff's limitations and testified in this case. There is overwhelming corroboration that the symptoms Plaintiff testified to are as severe as she describes. Plaintiff respectfully asks the Court to reverse the ALJ's decision because it failed to properly consider Plaintiff's testimony regarding the severity of her symptoms.

3.   Disposition

As outlined above, the ALJ relied in part on interpretation of Dr. Mai's opinions to reject plaintiff's subjective complaints. Given the court's determination that all of Dr. Mai's opinions have not been fully considered, the court cannot say that the ALJ's credibility analysis, to the extent it relied on the ALJ's conclusions regarding Dr. Mai's opinions, is sound. On remand, the Commissioner is directed to re-evaluate plaintiff's credibility in light of further consideration of the medication opinions.

/ / /

/ / /

/ / /

/ / /

## C. Lay Witness Evidence

In determining whether a claimant is disabled, an ALJ generally must consider lay witness testimony concerning a claimant's ability to work. See Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993); 20 C.F.R. §§ 404.1513(d)(4) & (e), 416.913(d)(4) & (e). Indeed, "lay testimony as to a claimant's symptoms or how an impairment affects ability to work is competent evidence . . . and therefore cannot be disregarded without comment." See Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996). Consequently, "[i]f the ALJ wishes to discount the testimony of lay witnesses, he must give reasons that are germane to each witness." Dodrill, 12 F.3d at 919. When rejecting third party statements which are similar in nature to the statements of plaintiff, the ALJ may cite the same reasons used by the ALJ in rejecting the plaintiff's statement. See Valentine v. Commissioner Soc. Sec. Admin., 574 F.3d 685, 694 (9th Cir. 2009) (approving rejection of a third-party family member's testimony, which was similar to the claimant's, for the same reasons given for rejection of the claimant's complaints).

### 1. The ALJ's Analysis

At Step 4, the ALJ also considered lay witness statements provided by plaintiff's mother, daughter, friend, and ex-husband. See CAR 38-39, 46. The ALJ stated:

> The record includes third party statements provided by the claimant's mother, Pamela L. Lyons; Gina Shaeffer, the claimant's daughter; Shannon Grant, a friend of the claimant; and David L. Mitchell, the claimant's ex-husband that corroborate the complaints alleged. The third party statements also describe observations of the claimant and history of interactions supporting the claimant's statements (Exhibits B3E, B5E, B11E, and B15E).
>
> * * *
>
> . . .The claimant's mother and ex-husband reported having been physical [sic] attacked by the claimant during periods of rage. The undersigned considered the statements that are not inconsistent with the progress notes describing irritability, anger, and rage but it appears that the claimant acknowledges these rage attacks and has been provided with suggestions on dealing with the rage. There is one reference to irritability with a treating source and receptionist but, otherwise, there are no reports of reactive anger or physical attacks. The undersigned finds the observations of the third parties consistent with the evidence as a whole but not to the degree that the symptoms have further restricted the claimant's residual functional capacity.

CAR 38-39, 46.

24

2.    Plaintiff's Contentions

Plaintiff contends the ALJ erred with respect to evaluation of the lay witness evidence in this case. According to plaintiff: "Here, the ALJ did not address each witness statement individually but rather generally as a group." Plaintiff adds:

> On one hand, the ALJ comments that the witness statements "are not inconsistent with the progress notes describing irritability, anger, and rage"; yet on the other hand, appears to reject the testimony because "there are no reports of reactive anger or physical attacks." In fact, the witness statements themselves represent "reports of reactive anger or physical attacks" the ALJ appears in search of. As the ALJ noted, Plaintiff's daughter, mother, and former husband all testified to witnessing anger and acts of violence. *See* AR at 416, 424. Plaintiff's brother and long-time friend, Ms. Grant, also testified to Plaintiff's unexplained rage and history of aggressive confrontations during manic periods. *See* AR at 432-33, 449.
>
> If the ALJ meant that treatment reports contradict these witnesses' reports of anger and physical attacks, then the ALJ is simply wrong. Plaintiff's history of violence is clinically documented and includes running her first husband over with a car. *See* AR at 708, 1151-52, 1162 1275-76, 1293; *see also* AR at 649, 655, 722. Likewise, if the ALJ intended that the witness statements are unsupported because Plaintiff has improved, it also is unsupported by substantial evidence. *See* AR at 46 [". . . but it appears that the claimant acknowledges these rage attacks and has been provided with suggestions on dealing with the rage"]. As detailed above, Dr. Mai's treatment reports do not reflect Plaintiff's manic depression has ever been successfully controlled during the relevant time period to allow for full-time work. There is no evidence of improvement in this record by which to dismiss testimony from the independent witnesses.
>
> Finally, the ALJ's general statement that witness testimony is "consistent with the evidence as a whole but not to the degree that the symptoms have further restricted the claimant's residual functional capacity" is problematic because it indicates the ALJ provided pretextual reasons to support a predetermined conclusion. Indeed, this statement, as the Ninth Circuit has observed, indicates the ALJ improperly inverted his analysis by determining Plaintiff's RFC before incorporating or accounting for relevant evidence. *See Trevizo v. Berryhill*, 871 F.3d 664, 678 fn.6 (9th Cir. 2017). Here, the ALJ expressly concedes the lay witness opinions are "consistent" with evidence in the record. The mere fact that these witnesses do not support the ALJ's RFC finding is not a valid reason to reject their testimony.

3.    Disposition

Essentially, the ALJ rejected the credibility of lay witness evidence for the same reasons plaintiff's credibility was rejected. Because the court concludes re-evaluation of plaintiff's credibility is warranted, re-evaluation of the lay witness evidence is also warranted.

///

# IV.  CONCLUSION

For the foregoing reasons, this matter will be remanded under sentence four of 42 U.S.C. § 405(g) for further development of the record and/or further findings addressing the deficiencies noted above.

Accordingly, IT IS HEREBY ORDERED that:

1.    Plaintiff's motion for summary judgment (ECF No. 18) is granted;

2.    Defendant's motion for summary judgment (ECF No. 19) is denied;

3.    The Commissioner's final decision is reversed and this matter is remanded for further proceedings consistent with this order; and

4.    The Clerk of the Court is directed to enter judgment and close this file.

Dated:  December 5, 2019

DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE